## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 21-144** |
| | **:** | |
| | **:** | |
| **JOHN ADAMS** | **:** | |

## O R D E R

**AND NOW**, this        day of          , 2021, having considered Defendant's Motion to

Dismiss Counts One and Two, and the government's response thereto, it is hereby **ORDERED**

that the Motion is **GRANTED**.  Counts One and Two of the indictment are hereby

**DISMISSED**.

BY THE COURT:

_____
**HONORABLE GERALD A. MCHUGH**
**United States District Court Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA :
:
:
:
v. : CRIMINAL NUMBER 21-144
:
:
:
JOHN ADAMS :

**DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO**

Pursuant to Federal Rule of Criminal Procedure 12 (b)(3), defendant John Adams

respectfully moves to dismiss Counts One and Two of the indictment.  Counts One and Two

charge sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), (c).  The facts

presented by the government in the instant case—which (if true) make out a wholly-local

prostitution offense—do not establish the type of conduct Congress intended to target in

enacting 18 U.S.C. § 1591.  Accordingly, Counts One and Two must be dismissed.

I.      **Statutory Background of 18 U.S.C. § 1591**

On October 28, 2000, Congress enacted the Victims of Trafficking and Violence

Protection Act of 2000 ("TVPA"). Pub. L. 106-386, 114 Stat. 1464 (2000). Division A of this

Act was known as the Trafficking Victims Protection Act ("TVPA").  The TVPA sought to

"combat trafficking in persons, a contemporary manifestation of slavery whose victims are

predominantly women and children, to ensure just and effective punishment of traffickers, and to

protect their victims." 22 U.S.C. § 7101(a). In support of the TVPA, Congress made a number of

findings relating to the "modern form of slavery" of trafficking in persons. *Id*. § 7101(b).

In particular, Congress found that many of the women and children trafficked each year

worldwide are trafficked into the "international sex trade," often by "force, fraud, or coercion."

*Id*. § 7101(b)(1)-(2). Further, "[t]raffickers lure women and girls into their networks through

false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models" and often "buy children from poor families and sell them into prostitution." *Id*. § 7101(b)(4). Victims are "often forced through physical violence to engage in sex acts or perform slavery-like labor." *Id*. § 7101(b)(6). Congress equated sex trafficking to forcible rape "when it involves the involuntary participation of another person in sex acts by means of fraud, force, or coercion." *Id*. § 7101(b)(9). In nearly every finding, Congress referred to the particular evils and consequences of international trafficking in persons. *See id*. § 7101(b)(1)-(5), (8), (10), (12), (14), (16)-(24). "Current practices of sexual slavery and trafficking of women and children are . . . abhorrent to the principles upon which the United States was founded." *Id*. § 7101(b)(22).

Among other provisions, the TVPA created criminal penalties for sex trafficking of children or by force, fraud, or coercion. Pub. L. 106-386, § 112(a), *codified at* 18 U.S.C. § 1591 (2000). A trafficker who "recruits, entices, harbors, transports, provides, or obtains by any means a person," knowing that "force, fraud, or coercion will be used to cause the person to engage in a commercial sex act," faced a penalty of any years up to life. *Id*. at § 1591(a)(1), (b)(1). The penalty provision for sex trafficking by force, fraud, or coercion, later amended to a minimum term of 15 years to life imprisonment by the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, Title II, § 208, 120 Stat. 587, is equivalent to that for sex trafficking of children under the age of 14. 18 U.S.C. § 1591(b)(2).

Senator Brownback of Kansas, who assisted in developing the TVPA, made it clear that the bill addressed the evils of international sex trafficking. 146 Cong. Rec. S10,164-67 (Oct. 11, 2000) (statements of Sen. Brownback). Senator Brownback began his statement by invoking the story of Irina, who answered a "vague ad" in a Ukranian newspaper and traveled to Israel to

3

make money stripping. Instead, she was driven to a brothel, her passport was burned, she was

designated as "property," and she was threatened with arrest and deportation. *Id*. The victims of

sex trafficking "are enslaved into a devastating brutality against their will, with no hope for

release or justice." *Id*. Senator Wellstone emphasized similarly egregious accounts of coercion

and violence. *Id*. at S10,168. Professor Jayashri Srikantiah summarized the legislative record

thusly:

> The image that permeated the legislative record . . . center[ed] on the
> female "innocent victims" of sex trafficking whose participation was
> "involuntary" and who would "face retribution or other serious harm upon
> return." The legislative history is replete with stories of girls and women who
> were trafficked for forced sex, and whose entry into sex trafficking was forcible
> or fraudulent – they were either physically coerced or "lured" into against (or
> without) their will. These stories often used terms like kidnapping and
> abduction to describe the trafficker's actions in the source country, and focused
> almost exclusively on victims of trafficking for sex.

Jayashri Srikantiah, *Perfect Victims and Real Survivors: The Iconic Victim in Domestic Human*

*Trafficking Law*, 87 B.U. L. Rev. 157, 170-71 (2007).

Notably, the TVPA does not criminalize prostitution generally. In 2007, proponents of

abolishing prostitution were able to push a bill through the House of Representatives, H.R. 3887,

that would federalize the criminal prosecution of pandering, pimping, and prostitution-related

offenses. Janie A. Chuang, *Rescuing Trafficking from Ideological Capture: Prostitution Reform*

*and Anti-Trafficking Law and Policy*, 158 U. Pa. L. Rev. 1655, 1692-93 (2010); *see* William

Wilberforce Trafficking Victims Protection Reauthorization Act of 2007, H.R. 3887, 110th

Cong. sec. 221, § 2430 (2007). Some contents of the bill were dispersed among other statutory

provisions.  However, other aspects failed due to the objections of multiple interested parties,

including the Department of Justice, because it represented an unwarranted federalization of state

crimes. Chuang, *supra*, at 1693. The Heritage Foundation objected to the legislation because it

would "trivialize the seriousness of actual human trafficking by equating it with run-of-the-mill sex crimes – such as pimping, pandering, and prostitution." *Id*. at 1693 & n. 152.[1]

## II.   Congress did not intend to reach local street crime prostitution through 18 U.S.C. § 1591.  Extending § 1591 to state conduct is an improper intrusion upon traditional state authority.

Congress does not exercise a general "police power;" that belongs to the States.  *Bond v. United States*, 572 U.S. 844 (2014).  *See also* U.S. Const. amend. X. "Perhaps the clearest example of traditional state authority is the punishment of local criminal activity." *Bond*, 572 U.S. at 858; *see also United States v. Morrison*, 529 U.S. 598, 618 (2000) ("[W]e can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims."). Because of this constitutional structure, federal courts should decline to read federal law as intruding upon the responsibility for states to regulate local criminal activity, "unless Congress has clearly indicated that the law should have such reach." *Id*. at 2083; *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).

In *Bond*, a jilted wife engaged in an "amateur attempt" to injure her husband's lover by spreading toxic chemicals on the lover's car, mailbox, and doorknob. *Bond* at 851. The victim sustained only minor chemical burns. *Id*. The federal government charged the defendant with possessing and using a chemical weapon, in violation of 18 U.S.C. § 229(a).  Under the statute,

---

[1] *See also*, Letter from Chuck Canterbury, Nat'l President, Fraternal Order of Police, to Patrick J. Leahy, Chairman, Senate Comm. on the Judiciary, and Arlen Specter, Ranking Member, Senate Comm. on the Judiciary (Dec. 6, 2007) (voicing concern that the Act would "involve . . . the Federal government" in "simple prostitution cases . . . unrelated to human trafficking"); Letter from Alexandria House et al., to Patrick J. Leahy, Chairman, Senate Comm. on the Judiciary, et al. 2 (Jan. 23, 2008) (criticizing as "unnecessary, confusing and resource draining" the Act's provision to "federalize[] all prostitution-related crimes as 'sex trafficking'"). Chuang, *supra*, at 1693.

the chemicals used— 10-chloro-10H-phenoxarsine and potassium dichromate —undoubtedly qualified as "toxic chemicals" which possession and use violated the statute. *Bond* at 866 (Scalia, J., concurring).

Nevertheless, the Court reversed the conviction, relying on principles of federalism "inherent in our constitutional structure." *Id*. at 856 (majority opinion). Though the government's applicability of the facts to the law was simple (and matched Justice Scalia's commonsense view), the Court rejected that interpretation because it threatened to "dramatically intrude upon traditional state criminal jurisdiction," and the Court avoids reading statutes in such a way in the absence of a "clear indication" that they do. *Id*. The background principle the Court relied upon was "grounded in the relationship between the Federal Government and the States under our Constitution." *Id*.

*Bond* also made note of other interpretive aides compelling a narrow reading of the federal statute. For example, it was clear that "the laws of the Commonwealth of Pennsylvania (and every other State) are sufficient to prosecute Bond." *Bond* at 863. The government demurred, arguing that the Commonwealth had only charged Bond with a minor offense. *Id*. No matter: "we have traditionally viewed the exercise of state officials' prosecutorial discretion as a valuable feature of our constitutional system." *Id*. By zealously prosecuting Bond, the federal government "displaced the public policy of the Commonwealth of Pennsylvania, enacted in its capacity as sovereign, that Bond does not belong in prison for a chemical weapons offense." In the end, "the global need to prevent chemical warfare" did not require the federal government to treat a local assault as the deployment of a chemical weapon. *Id*. Accordingly, the Court did not presume Congress to have authorized "such a stark intrusion into traditional state authority." *Id*. at 865.

The need for a clear indication from Congress also arose in *Jones v. United States*, 529

U.S. 848 (2000). There, the government offered a broad reading of 18 U.S.C. § 844(i) which, if

adopted, would have made virtually every arson in the country a federal offense. *Id*. at 859. The

Court rejected that interpretation, in part because arson "is a paradigmatic common-law state

crime" and it would not presume that Congress intended to significantly change the federal-state

balance in the prosecution of crimes without language that is "clear and definite." *Id*. at 858. *See*

*also Pierce v. United States*, 314 U.S. 306, 313 (1941) (finding where statute targets "particular

class of persons as the object of the sanction," there is "no room for enlargement of its

meaning").

III.     **Pennsylvania state law adequately addresses and punishes promoting the**

**prostitution of a minor, including by compulsion.**

Under Pennsylvania law, one commits a felony of the third degree if one promotes the

prostitution of a minor, exposing the perpetrator to up to seven years in state prison for this

crime.  Promoting prostitution of a minor is defined as:

> (1)  owning, controlling, managing, supervising or otherwise keeping, alone or in
> association with others, a house of prostitution or a prostitution business in which
> a victim is a minor;
> (2)  procuring an inmate who is a minor for a house of prostitution or a place in a
> house of prostitution where a minor would be an inmate;
> (3)  encouraging, inducing or otherwise intentionally causing a minor to become
> or remain a prostitute;
> (4)  soliciting a minor to patronize a prostitute;
> (5)  procuring a prostitute who is a minor for a patron;
> (6)  transporting a minor into or within this Commonwealth with intent to
> promote the engaging in prostitution by that minor, or procuring or paying for
> transportation with that intent;
> (7)  leasing or otherwise permitting a place controlled by the actor, alone or in
> association with others, to be regularly used for prostitution of a minor or the
> promotion of prostitution of a minor, or failure to make reasonable effort to abate
> such use by ejecting the tenant, notifying law enforcement authorities or other
> legally available means;  or

(8) soliciting, receiving or agreeing to receive any benefit for doing or agreeing to do anything forbidden by this subsection.

*See* 18 Pa. C.S. § 5902 (b.1). Further, it is a felony of a third degree, whether perpetrated against a minor or otherwise, if "the actor compels another to engage in or promote prostitution[.]" *Id*. at §5902 (c). Felonies of the third degree are punishable by up to seven years' incarceration in a state correctional institute and a fine of $2,500. 30 Pa.C.S. § 923(a)(8). Indeed, prostitution is a criminal offense in nearly every state in this country because it implicates the States' interests in public health, safety, welfare, and morals.

## IV.    Counts One and Two must be dismissed.

The state of Pennsylvania is the primary sovereign when it comes to making policy decisions about the health, safety, and welfare of Pennsylvania citizens. This includes policy decisions regarding pimping and prostitution. The state has established criminal penalties for the acts Mr. Adams is alleged to have committed. In order to stem the tide of federalization of local crime, § 1591 must be construed narrowly with an eye to the concerns of international sex trafficking by violence and subjugation that animated its enactment. The rule enunciated by the Supreme Court in *Bond* mandates that courts should construe federal criminal statutes that infringe upon a traditional area of state authority narrowly. Accordingly, Counts One and Two of the Indictment against Mr. Adams must be dismissed.

Respectfully submitted,

*/s/ Mythri Jayaraman*
MYTHRI JAYARAMAN
Assistant Federal Defender

8

## CERTIFICATE OF SERVICE

I, Mythri Jayaraman, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of Defendant's Motion to Dismiss Counts One and Two to be filed and served electronically through the Eastern District Clerk's Office Electronic Case Filing ("ECF") notification upon Erica Kivitz, Assistant United States Attorney, United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania, 19106.

*/s/ Mythri Jayaraman*
MYTHRI JAYARAMAN
Assistant Federal Defender

DATE: December 7, 2021