# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 21-144-1** |
| **JOHN ADAMS** | : | |

## ORDER

AND NOW, this _____ day of _____, 202__, having considered the defendant's motion to dismiss counts one and two (D.E. #59), and the government's response in opposition thereto, IT IS HEREBY ORDERED that the defendant's motion is DENIED.

BY THE COURT:

_____
**HONORABLE GERALD A. McHUGH**
**United States District Judge**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 21-144-1 |
| JOHN ADAMS | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS COUNTS ONE AND TWO PURSUANT TO
RULE 12(b)(3)**

The United States of America, by and through Jennifer Arbittier Williams, United States Attorney for the Eastern District of Pennsylvania, and Erica Kivitz, Assistant U.S. Attorney for the District, hereby responds in opposition to defendant's motion to dismiss Counts One and Two pursuant to Federal Rule of Criminal Procedure 12(b)(3).[1] Defendant makes the patently frivolous claim that the Trafficking Victims Protection Act (TVPA), codified in part at Title 18, United States Code, Section 1591, was passed to criminalize only international sex trafficking. By the plain language of the law, he is wrong.

Section 1591 makes it a crime to engage in the sex trafficking of a minor or by force "in or affecting *interstate or* foreign commerce . . ." 18 U.S.C. 1591(a)(1) (emphasis added). If Congress meant to limit sex trafficking to only that occurring in foreign commerce, it would have omitted the word "interstate" from the statute. Yet it did not; Congress expressly chose to include interstate sex trafficking.[2]

---

[1] Defendant's motion does not specify any subsection within 12(b)(3) upon which he is relying.
[2] Notably, Congress also expressly referenced domestic trafficking in Section 1596: "In addition to any *domestic* or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense. . . [in certain

"[E]very exercise of statutory interpretation begins with an examination of the plain language of the statute." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir.2001). When the statutory language is unambiguous, courts ordinarily do not consider legislative history or intent. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 257 (3d Cir.2013). The language is quite plain here, and in any event, there is nothing in the piecemeal legislative history cited by the defendant to suggest that Congress intended to exclude interstate or intrastate sex trafficking from the scope of this law. To the contrary, Congress directly stated its intent to have both an international and domestic effect in enacting the law:

> 12) Trafficking in persons substantially affects *interstate and* foreign commerce.
> . . .
> (14) Existing legislation and law enforcement *in the United States* and other countries are inadequate to deter trafficking and bring traffickers to justice, failing to reflect the gravity of the offenses involved. No comprehensive law exists *in the United States* that penalizes the range of offenses involved in the trafficking scheme. Instead, even the most brutal instances of trafficking in the sex industry are often punished under laws that also apply to lesser offenses, so that traffickers typically escape deserved punishment.
> (15) *In the United States*, the seriousness of this crime and its components is not reflected in current sentencing guidelines, resulting in weak penalties for convicted traffickers.
> . . .
> (22) *One of the founding documents of the United States, the Declaration of Independence, recognizes the inherent dignity and worth of all people. It states that all men are created equal and that they are endowed by their Creator with certain unalienable rights. The right to be free from slavery and involuntary servitude is among those unalienable rights. Acknowledging this fact, the United States outlawed slavery and involuntary servitude in 1865, recognizing them as evil institutions that must be abolished. Current practices of sexual slavery and trafficking of women and children are similarly abhorrent to the principles upon which the United States was founded.*

---

circumstances]." 18 U.S.C. § 1596 (emphasis added).

22 U.S.C. § 7101 (emphasis added).   Thus, even if the language of the statute were unclear, this legislative history stating the purpose of the TVPA leaves no doubt that it was intended to apply to domestic sex trafficking.

Unsurprisingly, then, numerous courts in this circuit have upheld convictions for purely domestic sex trafficking. *United States v. Doe*, 785 Fed. Appx. 57 (3d Cir. 2019) (affirming interstate sex trafficking of minor conviction under Section 1591); *United States v. Jackson*, 712 Fed. Appx. 141 (3d Cir. 2017) (same); *United States v. Senat*, 698 Fed. Appx. 701 (3d Cir. 2017) (same); *United States v. Smith*, 662 Fed. Appx. 132 (3d Cir. 2016) (affirming defendant's conviction under Section 1591 for trafficking minor victim entirely within Philadelphia); *United States v. Williams*, 428 Fed. Appx. 134 (3d Cir. 2011) (affirming Section 1591 conviction for running multi-state sex trafficking ring).   Courts in every other circuit have done the same.

Moreover, numerous courts have heard and rejected the very argument made by the defendant here. *See United States v. Walls,* 784 F.3d 543, 547 (9th Cir.2015) ("when Congress used the language 'in or affecting interstate or foreign commerce' in the TVPA, it intended to exercise its full powers under the Commerce Clause"); *United States v. Phea,* 755 F.3d 255, 263 (5th Cir.2014) (rejecting the defendant's argument that Congress could not validly regulate purely local activity under the commerce clause pursuant to Section 1591(a)); *United States v. Chappell,* No. 09–139 (JNE/JJK), 2010 WL 1131474, at *7 (D.Minn. Jan. 12, 2010) (holding that Section 1591(a) satisfies four-prong test for determining whether activity has substantial effect on interstate commerce, and even if defendant's conduct was purely local to State of Minnesota, "his activities 'contribute to the market that Congress's comprehensive scheme seeks to stop.'"); *United States v. Campbell*, 111 F. Supp. 3d 340, 342–46 (W.D.N.Y. 2015)

("Defendant's alleged actions, even if occurring solely in New York, had the capacity when considered with similar conduct by others to have a substantial impact on interstate commerce"); *United States v. Paris*, No. 03:06–CR–64 (CFD), 2007 WL 3124724, at *8 (D. Conn. Oct. 24, 2007) (finding it was within Congress's power to regulate defendant's intrastate recruiting and obtaining of women to perform commercial sex acts); *United States v. Clayton*, 18-524-RBS at ECF No. 154   (Surrick, J.) ("Every court that has considered whether the TVPA and specifically whether Section 1591's prohibition of interstate (as opposed to international) trafficking is a valid exercise of Congress's authority under the Commerce Clause, has concluded that it is."). As these cases make clear, Congress possessed the power to criminalize the defendant's conduct in this case, and Congress intended to criminalize such conduct by the plain language of the statute.

The defendant asserts that the TVPA does not criminalize "prostitution generally." Br. at 4. The government agrees; Section 1591 makes it a crime to engage in two forms of sex trafficking: specifically, in or affecting interstate or foreign commerce, (1) to cause a minor to engage in prostitution; or (2) to compel any person to engage in prostitution through force, fraud or coercion. *See* 18 U.S.C. § 1591. The defendant is not charged with "prostitution generally," he is charged with the former means of sex trafficking, *i.e.,* the prostitution of children.

The defendant's reliance on *United States v. Bond,* 572 U.S. 844 (2014), to assert overreaching by the government is wholly misplaced.   *Bond* was an example of the government charging a statute aimed at terrorism in the form of chemical warfare to address a marital dispute. The instant case is an example of the government charging a statute aimed at both international and domestic sex trafficking to address domestic sex trafficking. The conduct charged fits both the letter and spirit of the law.

Finally, in presenting his argument, the defendant quotes the definition of promoting prostitution of a minor under Pennsylvania law, implying that it captures the entirety of the defendant's actions in this case because his conduct does not encompass international sex trafficking, and positing that proceeding under state law is sufficient recourse for the government.   This argument has no greater merit here than it would were this a narcotics trafficking case, a bank robbery case, a fraud case, or a firearms case, where there likewise are parallel state and federal offenses that capture the same conduct.   No federal court would entertain the argument that a case should be dismissed simply because state law captures the same conduct charged in a federal indictment.

For the reasons set forth above, the government respectfully requests that the defendant's frivolous motion to dismiss Counts One and Two be denied.

                                                  Respectfully submitted,

                                                  JENNIFER ARBITTIER WILLIAMS
                                                  United States Attorney

                                                  */s/ Erica Kivitz*
                                                  ERICA KIVITZ
                                                  Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing response to defendant's motion to dismiss counts one and two by electronic filing or electronic mail to:

Mythri Jayaraman, Esq.
Mythri_Jayaraman@fd.org

      /s/ Erica Kivitz
ERICA KIVITZ
Assistant United States Attorney

Date:    December 9, 2021