IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 21-144-1 |
| | : | |
| JOHN ADAMS | : | |

McHUGH, J.                                                                                            January 6, 2022
**MEMORANDUM**

Defendant John Adams stands charged with sex trafficking of minors in violation of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1591 *et seq.*, He moves to dismiss two counts brought under the TVPA pursuant to a theory that the application of the TVPA to local prostitution is beyond the scope of the statute.[1] Defendant thus moves under Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense.[2] Although I am sensitive to Defendant's arguments that federal criminal statutes should be interpreted narrowly and with an eye to the constitutional structure of federalism, an analysis of both the TVPA's language and its legislative history lead

---

[1] Technically, this is the second motion brought under a similar theory. In addition to this motion, ECF 59, filed on Dec. 7, 2021, by Defendant's counsel, Defendant filed a *pro se* motion, ECF 55, on Oct. 27, 2021 arguing that the TVPA was enacted pursuant to the Necessary and Proper Clause in order to implement an international treaty made pursuant to the Treaty Clause which therefore restricts its enforcement in a domestic context. I am not required to consider Defendant's *pro se* argument because he is represented by counsel. *U.S. v. Essig*, 10 F.3d 968, 973 (3d Cir. 1993); *see also* Fed. R. Crim. P. 49(b)(4) (all filings by represented parties must be signed by an attorney). However, in the interests of thoroughness, I note that the arguments raised by Adams himself lack merit. First, under *Gonzales v. Raich*, 545 U.S. 1 (2005), wholly independent of any treaties, Congress has the power to regulate domestic conduct so long as the regulated conduct has an impact on national markets. Second, under *Missouri v. Holland*, 252 U.S. 416 (1920), even assuming that the TVPA were limited to implementing a treaty, Congress has the power to regulate over areas traditionally reserved to the states pursuant to its treaty powers.

[2] The government points out that Defendant does not specify under which subsection of Rule 12(b)(3) he brings his motion. But it is patent from the nature of his claim that the motion is brought pursuant to Rule 12(b)(3)(B)(v) for "failure to state an offense" because he argues that the TVPA does not apply to the conduct in question.

me to conclude that Congress intended for the TVPA to be applicable to the conduct alleged here. Defendant's motion will therefore be denied.

I. **Legal Standard**

"An indictment fails to state an offense if the specific facts alleged in it fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *U.S. v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007), *as amended* (Aug. 10, 2007) (cleaned up).

II. **Discussion**

At the outset, I note that Defendant does not bring this challenge under the Commerce Clause to suggest that the TVPA as applied represents an unconstitutional overreach of Congress's powers to regulate interstate commerce. Instead, Defendant relies upon Supreme Court's decision in *United States v. Bond*, 572 U.S. 844 (2014), arguing that the TVPA should not apply to purely in-state conduct as a matter of criminal statutory interpretation, when viewed through the lens of federalism. In *Bond*, the Supreme Court held that a federal statute passed to control the production, distribution, and use of chemical weapons could not be used to prosecute a local assault using chemical agents to give the victim a rash. *Id.* at 866. Although under a plain reading of the statutory language the conduct appeared to meet the elements of the crime, the Supreme Court found that such an interpretation "would dramatically intrude upon traditional state criminal jurisdiction, and we avoid reading statutes to have such reach in the absence of a clear indication that they do." *Id*. at 856-57. The dispositive question here then is whether the TVPA contains a clear indication that Congress meant it to be applied to local conduct that intrudes upon "areas of traditional state responsibility." *Id.* at 858.[3]

---

[3] The government's cursory response to Defendant's argument under *Bond* is that "[t]he instant case is an example of the government charging a statute aimed at both international and domestic sex trafficking to address domestic sex trafficking. The conduct charged fits both the letter and spirit of the law." Gov't Br. at 5. The government further argues that the fact that "parallel state and federal offenses

Given its language, the statute on its face would appear to apply applies to the conduct charged in Counts I and II of the indictment. Counts I and II set forth allegations with respect to two minor individuals who Defendant allegedly recruited, enticed, harbored and maintained so as to cause them to engage in commercial sex acts, while knowing or in reckless disregard of their minor status. 18 U.S.C. § 1591(a)(1) imposes criminal liability upon anyone who "knowingly in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits. entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person … knowing, or … in reckless disregard of the fact … that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." The statute does not make international trafficking an element of the crime. Instead, it applies to any conduct "in or affecting interstate or foreign commerce." Numerous courts have held that this is a constitutionally valid application of the statute under the Commerce Clause. *See, e.g., United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. 2007) ("Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce . . . and we cannot say that this finding is irrational."); *U.S. v. Walls*, 784 F.3d 543, 548-49 (9th Cir. 2015); *see also United States v. Victor Clayton*, Cr. No. 18-254, ECF 154, at 1 n.1 (Nov. 9, 2021) (Surrick, J.) ("Every court that has considered whether the TVPA and specifically whether § 1591's prohibition of interstate (as opposed to international) trafficking is a valid exercise of Congress's authority under the Commerce Clause, has concluded that it is.").

Ultimately, Defendant's motion does not challenge application of the plain language of the statute to Defendant's alleged conduct, or the power of Congress to regulate such conduct, both of which are clearly established. Rather, under *Bond*, Defendant argues that regardless of its

---

that capture the same conduct" exist is irrelevant to determining whether the government has failed to state an offense. Gov't Br. at 6.

wording the statute should be construed to exclude purely local prostitution offenses in light of the states' traditional police power over such offenses.

Defendant argues that "[t]he facts presented by the government in the instant case—which (if true) make out a wholly-local prostitution offense—do not establish the type of conduct Congress intended to target in enacting 18 U.S.C. § 1591." Def. Br. at 2. To support his argument, Defendant draws upon a common sense understanding of the word "trafficking" to emphasize the movement of persons across *borders* by deceptive or coercive means to effectively enslave victims to perform sexual acts or uncompensated labor. In particular, based upon the legislative history of the TVPA, Defendant argues that this movement across borders in the international context was the principal problem Congress sought to address. The defense cites extensively from the "Purposes and Findings" section of the TVPA, which includes, among other things, references to the "international sex trade," 22 U.S.C. § 7101(b)(2), a "growing transnational crime," § 7101(b)(3), the transportation of victims "from their home communities to unfamiliar destinations, including foreign countries … ," § 7101(b)(5), "organized criminal enterprises worldwide," § 7101(b)(8), that "[t]rafficking in persons is a transnational crime," § 7101(b)(24), and numerous references to the victims of trafficking often being immigrants illegally brought to the country where they are exploited, §§ 7101(b)(5), (17), (20).

Defendant then points to statements in the legislative record by the law's original co-sponsors, Senators Brownback and Wellstone. Sen. Brownback, for instance, defines "trafficking" as "the coercive transportation of persons into slavery-like conditions, primarily involving forced prostitution." 146 Cong. Rec. S10,167 (Oct. 11, 2000). Sen. Wellstone similarly details a number of examples of women and girls from foreign countries brought to the United States, whether by coercion or deceit, and subjected to a life of prostitution or forced labor, without any consequences

4

for the perpetrators of the trafficking. *Id.* at S10,167-68. Finally, Defendant argues that one attempt to reauthorize the TVPA in 2007, which would have included the express federalization of crimes involving pandering, pimping, and prostitution failed "because it represented unwarranted federalization of state crimes," citing objections made by various entities opposed to those aspects of the bill. Def. Br. at 4.

Defendant's reference to the legislative record around the original bill carries some weight. After reviewing the record of the original passage of the TVPA myself, I agree that there were myriad references to trafficking across international borders, but none to domestic or purely local conduct. The House Judiciary's report on the bill, interestingly, viewed its jurisdiction over the bill as limited to the immigration provisions and the criminal penalty provisions. H.R. Rep. 106-487, pt. II, at 17 (Apr. 13, 2000). The international focus of the law is further reflected in the original Act's structure, where eight out of thirteen sections were expressly focused on combatting international trafficking. 114 Stat. 1464, Pub. L. 106-386, §§ 104-111 (Oct. 28, 2000). And were Mr. Adams to have been accused of a prostitution offense that did not involve coercion or a minor, his citation to Section 221 of H.R. 3887, which was an earlier draft of the eventual reauthorization act of 2008, and included a provision that made it a federal crime to "persuade[], induce[], or entice[] any individual to engage in prostitution," would be strong evidence that Congress did not intend to regulate his conduct and instead desired to leave such regulation for the states.

But Mr. Adams is accused of trafficking related to a victim under the age of 18 which Congress has clearly indicated it views as a more severe crime than prostitution generally and which it has found is under-prosecuted by the states. A fuller view of both the congressional record and the statute itself shows this. Notably, the statute expressly defines "severe forms of trafficking in persons" as "sex trafficking in which a commercial sex act … in which the person induced to

perform such act has not attained 18 years of age." § 7102(11)(A). In light of this definition, the TVPA's "Purposes and Findings" section includes provisions reflecting Congress's intent to regulate certain severe forms of sex trafficking that it understood to be inadequately punished by states.  Most notably, Congress found that "[e]xisting legislation and law enforcement in the United States and other countries are inadequate to deter trafficking and bring traffickers to justice, failing to reflect the gravity of the offenses involved." § 7101(14).  Congress further lamented that "even the most brutal instances of trafficking the sex industry are often punished under laws that also apply to lesser offenses, so that traffickers typically escape deserved punishment." § 7101(14).

Looking more deeply, the legislative history of the TVPA's reauthorizations and amendments clearly reflects an understanding by Congress that the law and its penalties should apply against local violations that do not involve international components. The Trafficking Victims Protection Reauthorization Act of 2005, in particular, reflects an intent that the TVPA have domestic application to minor victims who are enticed into the commercial sex trade.  Sen. Leahy, who took over co-sponsorship of the legislation with the passing of Sen. Wellstone, spoke to the very factual situation at issue here when introducing the reauthorization act in the Senate:

> I am especially pleased that this reauthorization package has been improved significantly. For the first time, the bill focuses not only on the important goal of preventing international human trafficking, but also on preventing the human trafficking that occurs within our own borders. Children here in the United States are at tremendous risk, especially those who are homeless or runaways, and they are particularly susceptible to being domestically trafficked for purposes of commercial sexual exploitation. I will not rest until this alarming trend is stopped.

151 Cong. Rec. S14,417.[4]  Sen. Leahy's focus on the risk that domestically based children who are homeless or runaways may be susceptible to trafficking falls squarely within the facts alleged in this case.

---

[4] In addition to Sen. Leahy's discussion of the bill, the law includes several provisions specifically related to domestic trafficking.  The Attorney General was charged to study and report on

Over the course of the next decade and a half, Congress reauthorized or otherwise amended the provisions of the TVPA several times.[5] On many occasions, these amendments were made to § 1591 itself or § 1591 was cross-referenced in related provisions of the code. At no point did Congress manifest an intent to limit the application of § 1591, which on its face applies to any minor trafficked into commercial sex acts. Perhaps the clearest indication of Congress's intent to apply the TVPA to domestic minors for local offenses can be found in the Justice for Victims of Trafficking Act of 2015, Pub. L. 114–22, 129 Stat. 227 (May 29, 2015). There, Congress amended § 1591 to add the words "solicits or patronizes" to the list of prohibited conduct in order to clarify that both purveyors and purchasers of sex from minors were liable under the TVPA. § 109(4). In doing so, Congress explicitly endorsed the Eighth Circuit's decision in *United States vs. Jungers*, 702 F.3d 1066 (8th Cir. 2013), for its interpretation of "obtain" as applying to purchasers of sex from minors. § 109(3). *Jungers* involved entirely local child sex trafficking where state and federal officers conducting a sting operation in South Dakota "pretended to be a man offering his girlfriend's underage daughters for sex while his girlfriend was out of town." *Jungers*, 702 F.3d at

---

"sex trafficking and unlawful commercial sex acts in the United States." Trafficking Victims Protection Reauthorization Act of 2005, Pub. L. 109–164, § 201, 119 Stat. 3558. It also created a pilot program under the Secretary of Health and Human Services to provide residential treatment facilities for "juveniles subjected to trafficking," defining such individuals as "a United States citizen, or alien admitted for permanent residence, who is the subject of sex trafficking or severe forms of trafficking in persons that occurs, in whole or in part, within the territorial jurisdiction of the United States and who has not attained 18 years of age." §203(f). And it included a grant program to encourage state efforts to prosecute local trafficking. § 204.

[5] These amendments and reauthorizations include: Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. 108–193, 117 Stat 2875; Trafficking Victims Protection Reauthorization Act of 2005, Pub. L. 109–164, 119 Stat. 3558; Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109–248, 120 Stat 587; William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, PL 110–457, 122 Stat 5044; Justice for Victims of Trafficking Act of 2015, Pub. L. 114–22, 129 Stat 227; Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. 115–164, 132 Stat 1253; Missing Children's Assistance Act of 2018, Pub. L. 115–267, 132 Stat. 3756; Abolish Human Trafficking Act of 2017, Pub. L. 115–392, 132 Stat 5250; Trafficking Victims Protection Act of 2017, Pub. L. 115–393, 132 Stat. 5265; Frederick Douglass Trafficking Victims Prevention and Protection Reauthorization Act of 2018, Pub. L. 115–425, 132 Stat. 5472.

1067. Although domestic applicability was not at issue in *Jungers*, Congress's ratification of that opinion reinforces its implied understanding—without need to further clarify—that § 1591 broadly applies to local sex trafficking of minors.[6] More recently, Congress ordered the Attorney General to issue guidance to all DOJ offices "emphasizing that an individual who knowingly solicits or patronizes a commercial sex act from a person who was a minor (consistent with [18 U.S.C. § 1591(c)]) … is guilty of an offense under chapter 77 of title 18, United States Code, and is a party to a severe form of trafficking in persons, as that term is defined in [the TVPA at 22 U.S.C. § 7102(9)])." Abolish Human Trafficking Act of 2017, Pub. L. 115–392, 132 Stat 5250. This again reaffirmed Congress's broad interpretation of the statutory language to apply to all sex trafficking of minors and not just that involving international transportation.

Federal courts that have considered arguments against the application of the TVPA to purely local conduct have similarly found that Congress provided sufficiently clear indication under the *Bond* standard that it intended the TVPA to apply to conduct traditionally regulated by the state. Notably in *U.S. v. Walls*, the Ninth Circuit held, solely on the basis of the "Purpose and Findings" section of the TVPA, §§ 7101(b)(12) and 7101(b)(14), that Congress indicated an interest in regulating purely local conduct that fell within the definition of § 1591. 784 F.3d 543, 546-47 (9th Cir. 2015). In *U.S. v. Callahan*, the Sixth Circuit addressed *Bond* in analyzing § 1589, which prohibits forced labor under the TVPA. It held that the TVPA's implementation of the Thirteenth Amendment made forced labor a special matter of federal concern that reduced any

---

[6] The assumption that § 1591 broadly applies to commercial sex crimes involving minors without reference to transport over borders is also incorporated in the broader statutory universe of federal sex crimes. *See, e.g.*, Allow States and Victims to Fight Online Sex Trafficking Act of 2017, Pub. L. 115–164, 132 Stat 1253 (making operators of computer services who promote prostitution liable for an aggravated violation if their conduct contributed to a violation of § 1591(a)); Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. 108–21, 117 Stat 650 (defining "illicit sexual conduct" in the context of sex tourism by reference to § 1591).

need for the court to consider traditional state policing prerogatives. 801 F.3d 606, 619-20 (6th Cir. 2015); *see also U.S. v. McMillian*, 777 F.3d 444 (7th Cir. 2015) (Posner, J.) (summarily dismissing a challenge to § 1591 as applied to purely local conduct under *Bond* because "there is no basis for so limited an interpretation").[7] I see no reason to reach a different conclusion.

Following a wider view of the legislative history, consideration of the language of the TVPA itself, and existing precedent, I am persuaded that § 1591 was intended by Congress to intrude upon traditional state policing prerogatives related to prostitution in order to more robustly prosecute crimes of coercion and exploitation of minors. Congress did so pursuant to its powers under the Commerce Clause and the Thirteenth Amendment in order to realize the Thirteenth Amendment's prohibition on slavery. Counts I and II of government's indictment therefore charge offenses for which Defendant may be prosecuted. Defendant's motion to strike those counts of the indictment will be denied. An appropriate order follows.

  /s/ Gerald Austin McHugh
United States District Judge

---

[7] Non-precedential panels of the Third Circuit have on several times upheld convictions under § 1591 for trafficking minors, generally with facts involving interstate travel, but without any allegations of international origins. *See U.S. v. Doe*, 785 Fed. Appx. 57 (3d Cir. 2019) (non-precedential) (involving minor across state lines); *U.S. v. Senat*, 698 Fed. Appx. 701 (3d Cir. 2017) (non-precedential) (involving minor across state lines); *U.S. v. Smith*, 662 Fed. Appx. 132 (3d Cir. 2016) (non-precedential) (involving minor, apparently entirely in Philadelphia); *U.S. v. Williams*, 428 Fed. Appx. 134 (3d Cir. 2011) (non-precedential) (involving minor across state lines). It must be noted that none of these cases addressed the potential implications of *Bond*.