**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIM. NO. 21-144-1** |
| **JOHN ADAMS** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA**

The United States of America, by and through Jacqueline C. Romero, United States
Attorney for the Eastern District of Pennsylvania, and Erica Kivitz and Kelly Harrell, Assistant
United States Attorneys for the District, hereby opposes defendant's motion to withdraw his
guilty plea. Because the defendant has not met the requirements for asserting innocence and was
clearly advised of the consequences of his plea, his motion must be denied.

I.      **BACKGROUND**

Defendant John Adams was charged by superseding indictment on September 15, 2022
with two counts of sex trafficking of minors and aiding and abetting, in violation of 18 U.S.C. §§
1591 and 2 (Counts One and Two); one count of tampering with evidence in a federal
investigation, in violation of 18 U.S.C. § 1519 (Count Three); one count of tampering with a
witness, in violation of 18 U.S.C. § 1512(b)(3) (Count Four); and two counts of false statements,
in violation of 18 U.S.C. § 1001 (Counts Five and Six). An initial indictment charging Adams
with counts one through three was returned on April 8, 2021.

Trial in this matter was re-scheduled on multiple occasions, and was ultimately set for
November 29, 2022.  Adams filed a litany of motions and letters since his initial indictment, both
through counsel and *pro se* (ECF # 41, 45, 46, 48, 49, 50, 55, 59, 69, 90, 95). Significantly, the

basis of several of these filings was the defendant's denial that his conduct in this case—child sex trafficking—could be charged under federal law (ECF # 45, 49, 55, 59, 69, 90). As these filings reflect, the defendant raised this argument in motions to dismiss, a motion for bail, and in various letters to the Court. In his *pro se* filings, Adams dissected statutes, cited constitutional provisions, and advised the Court that he had previously clerked for a judge, among other things. The Court properly denied each one of Adams' many motions. Significantly, Adams appealed this Court's denial of his motion for bail (ECF # 94), again resting on the argument that he could not be charged with child sex trafficking under federal law because his conduct was wholly domestic. The Third Circuit also denied the defendant's bail motion (ECF #115).

On Friday, November 18, 2022, just 10 days before jury selection was scheduled to begin in the case, defendant's counsel at the time, Natasha Taylor-Smith, emailed the Court and government counsel to advise that the defendant decided to plead guilty. The Court scheduled a change of plea hearing for Tuesday, November 22, 2022, at which time the defendant pleaded guilty to the 6-count superseding indictment pursuant to a written plea agreement (ECF # 147).

The plea agreement consisted of 12 pages with a total of 18 paragraphs, accompanied by a 3-page acknowledgement of rights form. Each paragraph was written in plain English, double spaced, typed in 12-point font, and contained no footnotes. Contained in the agreement, among other things, in paragraph 14(b)(v), was a provision which preserved Adams' ability to appeal the Court's decision that the Trafficking Victims Protection Act (TVPA) applied to the sex trafficking of minors as charged in Counts One and Two of the superseding indictment. In addition, paragraph (12), which spelled out the stipulations between the parties, read in part:

> It is understood and agreed that: (l) the parties are free to argue (except as stated below) the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments, and departures; (2) these stipulations are not binding upon either the Probation

Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

Adams and his counsel signed the plea agreement and the acknowledgement of rights form, as later confirmed by the Court at the change of plea hearing on November 22, 2022.

The hearing on November 22, 2022, was scheduled for 10:00 a.m. The Court gave the defendant and his counsel additional time to confer that morning and did not convene until just before 10:30 a.m. Tr. 2 (Nov. 22, 2022). At the outset, government counsel placed certain changes to the factual basis in its change of plea memorandum on the record as requested by the defendant, who had read the government's change of plea memorandum that morning. Tr. 3-5.

The defendant was placed under oath. Tr. 6. He advised the court that he had completed high school and real estate school, and could speak, read, and write English. Tr. 6. He told the Court that he was not under the influence of any alcohol, drugs, or medications which would affect his ability to participate in the proceedings, and that he had never been diagnosed nor treated for any mental illness or substance abuse issue. Tr. 7. He confirmed that he had sufficient opportunity to review the indictment with his attorney and that she answered all of his questions about it. Tr. 7, 8. He also confirmed that he was satisfied with Ms. Taylor-Smith's representation. Tr. 8. He told the Court that he had not been threatened, coerced, or forced to plead guilty, and that he was doing so of his own free will. Tr. 8.

Adams confirmed that the signature on the plea agreement was his, and that he signed it voluntarily. Tr. 9. He also advised that he read the plea agreement and discussed it thoroughly before he signed it, and that he had sufficient time to do so. Tr. 9.

The Court asked the government to summarize the terms of the plea agreement, and the government did so. Tr. 9-11. Among other things, government counsel stated: **"The defendant**

**may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the defendant what sentence the Court will impose."** Tr. 10. The government noted that the stipulations were outlined in paragraph 12, and read them into the record. Tr. 10. The government also noted, "The defendant and his lawyer have fully discussed this plea agreement, and the defendant is agreeing to plead because the defendant admits that he is guilty," and concluded by stating, "the parties' [sic] guilty plea agreement contains no additional promises, agreements or understandings other than those set forth in this written plea agreement…." Tr. 11, 12. Defense counsel confirmed that there were no agreements, conditions, or promises aside from what was contained in the written agreement. Tr. 12. Adams then confirmed that no one had promised him anything or offered him anything aside from what was in writing. Tr. 12.

The Court advised Adams of the maximum penalties, the applicable mandatory minimum penalties, and financial penalties. Tr. 12, 13. Adams confirmed that he understood his exposure. Tr. 14. The Court then told Adams, "**No one can ever guarantee any defendant what sentence a judge will impose… if the sentence I impose is more severe than you had hoped for, or more severe than you had expected[sic] you don't have the right to go back in time and withdraw your plea of guilty."** Tr. 14. Adams confirmed that he understood. Tr. 14.

The Court also explained the concept of sentencing guidelines to Adams, as well as the sentencing factors. Tr. 14, 15. The Court described the process by which a presentence report is completed. Tr. 16. In doing so, the Court explained that Adams could review the presentence report and request corrections or changes directly to the Court if the probation office did not make his requested changes. The Court advised, "If [the probation office] refuse[s] to change it, you have the right to ask me to change it…And I'll make a decision; and maybe I will, maybe I

4

won't." Tr. 16. The Court specifically advised Adams, **"Just with your plea of guilty, even if there's something in [the presentence report] with which you disagree, you don't have the right to go back and withdraw your plea of guilty."** Tr. 16. Adams confirmed that he understood. Tr. 16.

The Court told Adams that it would come up with a sentence after considering the guidelines, the sentencing factors, and the arguments of counsel. Tr. 15. Adams confirmed he understood.

The Court confirmed that Adams signed the acknowledgment of rights, and reviewed each one. Adams confirmed he understood each of the rights he was giving up by pleading guilty, to include the opportunity to confront and cross examine witnesses in a trial. Tr. 17- 20.

The Court also advised Adams of the limits on his right to appeal. Tr. 20-21. Adams confirmed he understood. Tr. 21.

The government stated the elements of each of the offenses to which Adams was pleading guilty. Tr. 21-23. After, the Court asked Adams whether he had any questions about those charges against him, and Adams confirmed he did not. Tr. 23.

Finally, Adams confirmed that he agreed with the government's factual basis set forth in its change of plea memorandum (ECF # 146), after acknowledging that he read it and requested the changes set forth on the record at the outset of the hearing. Tr. 25, 26. Adams then confirmed that he had in fact committed the crimes to which he was pleading guilty. Tr. 26.

The Court confirmed that all counsel did not see an impediment to proceeding with the guilty plea. Tr. 26. The Court explained that having engaged with the defendant during the proceedings, the Court was satisfied that Adams was "fully alert, competent, and capable of entering an informed plea," and that the plea was "knowing and voluntary, and not the result of

any force, or threats, or promises, and that the only agreements as between the Government and the defense are set forth in the written plea agreement, which the defendant has signed." Tr. 26, 27. The Court was also satisfied that there was an adequate factual basis for the plea, that Adams understood the charges and the maximum possible penalties, and that he was giving up his right to proceed to trial. Tr. 27. Then, Adams pleaded guilty to the superseding indictment. 27, 28. The Court asked Adams if he had any questions about what had occurred, and Adams confirmed he did not. Tr. 27. Lastly, he confirmed that everything he told the Court was the truth, and the Court accepted his plea of guilty. Tr. 27.

Prior to adjourning, defense counsel advised the Court that Adams had not received discovery that she had provided to the jail for Adams' review. Tr. 28. Defense counsel also confirmed that it did not impact Adams' decision to plead guilty. Tr. 28, 29. The Court advised that it would make an inquiry with the Bureau of Prisons, then asked Adams, "as your counsel said, that's not the basis on which you've entered a plea of guilty today, correct?" Adams replied, "No sir." Tr. 30.

Since the time of his guilty plea, plea counsel became a judge in the Philadelphia Court of Common Pleas. Upon Judge Taylor-Smith's departure, Assistant Federal Defender Jonathan McDonald, Esq., entered his appearance on Adams' behalf. After the completion of the presentence report, he moved to withdraw from the case. The Court granted the motion and appointed James Maguire, Esq., who filed the instant motion 13 months after Adams pleaded guilty.

In the motion, Adams claims that he is legally innocent; that he reviewed documents which "contain untrue statements;" that he received "misadvice" from plea counsel regarding the sentence he would receive; and that the government would not be prejudiced by the defendant

6

withdrawing his plea. The defendant's arguments are refuted by the record and his motion must be denied.

## II.    ARGUMENT

Federal Rule of Criminal Procedure 11(d) provides, in pertinent part: "A defendant may withdraw a plea of guilty . . . (2) after the court accepts the plea, but before it imposes sentence if . . . (B) the defendant can show a fair and just reason for requesting the withdrawal." A guilty plea is a "grave and solemn act," *Brady v. United States*, 397 U.S. 742, 748 (1970), and may not be withdrawn "on a lark." *United States v. Hyde*, 520 U.S. 670, 676 (1997); *see also United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975) (a guilty plea is not "a mere gesture, a temporary and meaningless formality reversible at the defendant's whim."). Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his request. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). The defendant bears the burden of demonstrating a "fair and just" reason to withdraw his plea, and "that burden is substantial." *Id.*, citing *Hyde*, 520 U.S. at 676-77. Neither a shift in defense tactics, a change of mind, nor the fear of punishment are adequate reasons to impose on the government the expense and difficulty of trying a defendant who has already knowingly acknowledged his guilt by pleading guilty. *Jones*, 336 F.3d at 252; *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001).

In evaluating a motion to withdraw a guilty plea, a court must consider: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons to withdraw the plea; and (3) whether the government would be prejudiced by the withdrawal. *Brown*, 250 F.3d at 815. "The government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea." *United States v. Martinez*, 785 F.2d 111, 115-16 (3d Cir. 1986), quoting *United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir. 1977).

The defendant cannot satisfy even one of these three factors, and therefore, his motion must fail.

### A.  **Unsupported Assertion of Innocence**

As to the first of these factors, a defendant must assert innocence, and must "buttress" the assertion with facts in the record that support a claimed defense. *Brown*, 250 F.3d at 818. A bald claim of innocence is insufficient. *Id.*; *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (defendant's "bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea."). A defendant who moves to withdraw his guilty plea must also explain why contradictory positions were taken under oath at the guilty plea hearing. *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992); *see Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Unger*, 665 F.2d 251, 254 (8th Cir. 1981) (this procedure protects the judicial system from "a potential flood of prisoners recanting their Rule 11 statements").

Further, a defendant must set forth reasons that are not only technically sufficient, but also credible. In doing so, he has the burden of overcoming his own repeated sworn admissions of guilt at his plea colloquy. "The representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (internal citations omitted); *Hyde*, 520 U.S. at 675-79 (applying same reasoning to motion to withdraw guilty plea).

The defendant's bald assertion that "18 U.S.C. § 1591 does not reach the charged conduct in this case," Mtn. 3, is not a legitimate claim of "legal innocence" nor a basis to withdraw his plea. *See* Plea Tr. at 20 (Nov. 22, 2022); ECF #147 ¶14(b)(5). The Court need not evaluate the legitimacy of this claim, as it has already flatly rejected it after it was raised in both counseled and *pro se* motions.

In its nine page memorandum/order denying the defendant's motion to dismiss, after a detailed and thorough analysis of the plain language of the statute, Congress's power to regulate such conduct, and the legislative history, among other things, the Court stated, in no uncertain terms, "I am persuaded that § 1591 was intended by Congress to intrude upon traditional state policing prerogatives related to prostitution in order to more robustly prosecute crimes of coercion and exploitation of minors." ECF # 62. Indeed, courts across the country have reached the same conclusion. *See, e.g., United States v. Walls,* 784 F.3d 543, 547 (9th Cir. 2015) ("when Congress used the language 'in or affecting interstate or foreign commerce' in the TVPA, it intended to exercise its full powers under the Commerce Clause"); *United States v. Phea,* 755 F.3d 255, 263 (5th Cir. 2014) (rejecting the defendant's argument that Congress could not validly regulate purely local activity under the commerce clause pursuant to Section 1591(a)). *See also United States v. Campbell*, 111 F. Supp. 3d 340, 342–46 (W.D.N.Y. 2015) ("Defendant's alleged actions, even if occurring solely in New York, had the capacity when considered with similar conduct by others to have a substantial impact on interstate commerce"); *United States v. Chappell,* 2010 WL 1131474, at *7 (D. Minn. Jan. 12, 2010) (holding that Section 1591(a) satisfies four-prong test for determining whether activity has substantial effect on interstate commerce, and even if defendant's conduct was purely local to State of Minnesota, "his activities 'contribute to the market that Congress's comprehensive scheme seeks to stop.'"); *United States*

*v. Paris*, 2007 WL 3124724, at *8 (D. Conn. Oct. 24, 2007) (finding it was within Congress's power to regulate defendant's intrastate recruiting and obtaining of women to perform commercial sex acts).

In *United States v. Clayton*, 2022 WL 2651848, at 4-5* (E.D. Pa. July 8, 2022), Judge Surrick, denying the defendant's motion to withdraw his guilty plea, stated as follows:

> Defendant's claim of legal innocence regarding the TVPA is wrong. Defendant asserted throughout the pretrial proceedings…that he could not be charged with sex trafficking because he alleged that that Congress lacked the authority to pass the TVPA and the TVPA only criminalizes international sex trafficking, not interstate sex trafficking. This Court rejected these baseless claims numerous times …Defendant's persistence in making a meritless claim will not satisfy the legal innocence standard.

*Id.* Since Adams' guilty plea, his argument specifically relating to the application of *Bond v. United States*, 572 U.S. 844 (2014) in the context of Section 1591 was considered by the Fifth Circuit in *United States v. Renteria*, 84 F.4th 591, 596 (5th Cir. 2023). In addressing the precise argument made by Adams, the Fifth Circuit made it explicitly clear that, "Because Congress included a clear indication that § 1591 is meant to reach "purely local crimes," Renteria's argument under *Bond* fails." *Renteria*, 84 F.4th 591 at 596.

As such, for purposes of the instant motion, Adams' repeatedly rejected claim of legal innocence is insufficient to satisfy the first factor. Moreover, the guilty plea agreement specifically carves out the defendant's right to appeal on this basis, allowing him to make these same arguments to the Third Circuit on appeal.

Finally, despite acknowledging his awareness concerning discovery which he had not reviewed, Adams now claims that the materials contain "untrue statements that weaken the strength of the government's case." To the extent that the defendant raises this in an effort to support an insinuated but unstated assertion of factual innocence, this claim must be rejected -

the defendant already admitted the facts of this case which form the basis of his guilt when he was under oath. The defendant has not-and cannot-claim that he did not engage in the conduct set forth in the government's change of plea memorandum, and whatever "untrue statements" he claims to have read do not undermine the veracity of his admissions at his change of plea hearing. *See, e.g., United States v. Hill-Johnson*, 806 F. App'x. 114, 118 (3d Cir. 2020) (not precedential) (defendant who argued that he was not given timely access to discovery, which would have changed his plea decision, "amounts to nothing more than a "shift in defense tactics" or "a change of mind," which we have held "are not adequate" to support a motion to withdraw a guilty plea") (internal citations omitted); *United States v. Monac,* 120 F. App'x. 924, 927 (3d Cir. 2005) (not precedential) (evidence uncovered after plea not relevant to issue of whether defendant committed the violation alleged in the count to which he pled guilty); *United States v. Sgarlat*, 705 F. Supp. 2d 347, 358 (D.N.J. 2010) ("At the very most, new counsel has emerged with a list of other facts or tactics that could be used to present a case if the matter went to trial…. These arguments… do not demonstrate that the Defendant's admissions and confessions were untrue. They merely reflect strategies that could be employed to attempt to demonstrate that the Government may not have a perfect, seamless case, as in essentially any criminal prosecution.").

As Adams admitted, his actions included, among other things, harboring J.A. and S.H., who he knew to be minors, at his Mentor Street and Cleveland Street properties in Philadelphia; requiring the minors to have oral and vaginal sex with him on multiple occasions, and telling each of them that he would kick them out if they refused to engage in sexual activity with him; directing the minors' commercial sex activities for which he took at least a portion of their profits; directing the minors not to tell anyone what they were doing, to conceal their real ages,

11

and to delete their text message conversations with him, which revealed his child sex trafficking activities; writing a false exculpatory statement at the Tinicum Police Department; using J.B., at the time a 17-year-old girl, to make a surreptitious recording in which Adams again uttered a false exculpatory statement which he sought to use as blackmail and to exculpate himself in this investigation; paying S.H. a sum of cash to dissuade her from cooperating with law enforcement; paying S.H.'s brother a sum of cash in an attempt to convince him to dissuade S.H. from cooperating with law enforcement; making false statements to the FBI; and deleting incriminating information from his cell phone because he knew that he was under investigation. As reflected in the government's trial memorandum (ECF # 130), and the factual basis set forth in the government's change of plea memorandum (ECF #146), the government's case was exceptionally strong. The government was prepared to call up to twelve civilian fact witnesses to testify about Adams' deplorable conduct. ECF #130. Adams did not plead guilty because of promises or missing discovery as he confirmed at his change of plea hearing; Adams pleaded guilty because he felt the walls closing in on him as his trial loomed and because he was, in fact, guilty of the crimes, as he acknowledged under oath multiple times during the guilty plea hearing.

    **B.** **Insufficient Reasons for Withdrawal**

       The defendant also fails to set forth any valid reason for permitting him to withdraw his plea. The defendant claims that he received "misadvice" from plea counsel, specifically an erroneous sentencing prediction upon which he relied. Yet, the plea agreement signed by Adams and the plea colloquy clearly demonstrate that no promises were made regarding his sentence. Notably, Adams even admits in the addendum to his motion, "My lawyer told me that the judge could give me a longer sentence . . ." Declaration ¶ 1.

As a matter of law, even if defense counsel had inaccurately predicted the sentencing guidelines in this case, there is no basis for withdrawal of the plea, because the Court explicitly and accurately informed the defendant of the possible penalties that would result from his guilty plea.  The very purpose of the guilty plea colloquy is to foreclose precisely the sort of claim the defendant now offers.

While the defendant misplaces reliance on cases decided in other circuits, the Third Circuit has held that any errors or misinformation provided by defense counsel regarding a potential sentence are not grounds for relief where the in-court guilty plea colloquy accurately states the potential maximum sentence and the lack of any other guarantees as to the potential sentence. *See United States v. Smith*, 262 Fed. Appx. 435, 436, 2008 WL 197065, *1 (3d Cir. 2008) (defendant not entitled to relief where he decided after reviewing his presentence report that he wanted to withdraw his guilty plea because his counsel had failed adequately to advise him of the guideline range he would face); *United States v. Shedrick*, 493 F.3d 292, 299 (3d. Cir. 2007) ("This case falls well within well-established precedent: defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion"); *Scarbrough v. Johnson*, 300 F.3d 302, 303-04 (3d Cir. 2002) (where defendant pled to second-degree murder with mandatory life imprisonment, but later claimed that defense counsel misinformed him that he would be eligible for parole, there was no error because during the guilty plea colloquy the state court repeatedly and correctly informed the defendant that the penalty was an "automatic life sentence" and that the court would have no control over parole); *United States v. Mustafa*, 238 F.3d 485, 491 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were

dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum"); *United States v. Mollica*, 284 Fed. App'x. 990, 996-97 (3d Cir. 2008) (not precedential) (where defense counsel miscalculated estimated sentence, defendant's mistaken belief regarding likely sentence not sufficiently strong reason to withdraw plea where defendant advised of maximum exposure and colloquy was thorough).

Merely asserting disappointment with the anticipated sentence is an insufficient basis for the withdrawal of a guilty plea. *Masciola v. United States*, 469 F.2d 1057, 1058 (3d Cir. 1972). This is precisely the circumstance in which Adams finds himself.

In support of his claim, Adams alleges that his lawyer advised him that the government would only seek the enhancements listed in the plea agreement, yet he assured the Court during the colloquy that he read the agreement and understood it. Paragraph twelve (12) of the agreement states as follows:

> It is understood and agreed that: (l) the parties are free to argue (except as stated below) the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments, and departures; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

ECF #147. Adams, who has boasted that he clerked for a judge (ECF #69), and who has filed numerous *pro se* detailed letters in legalese which cite statutes, cases, and constitutional provisions, now wants this Court to believe that he signed a document admitting his guilt without reading it first, after telling Court, under oath, that he read it, understood it, and had no questions about it. Adams' claims can be reduced to the category of "pleader's remorse" upon reading the

14

presentence report, and nothing more. *See United States v. King*, 604 F.3d 125, 140 (3d Cir. 2010) (defendant suffered from "pleader's remorse" once he learned of the proposed guideline range in the presentence report, "but changing one's mind is not a sufficient reason to justify withdrawal of a guilty plea") (internal citations omitted). *See also United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995) (defendant had a change of heart after reading the presentence report and contemplating the possible sentence, which was inadequate to justify withdrawal); *United States v. Graulich*, 524 F. App'x. 802, 806 (3d Cir. 2013) (not precedential) (dissatisfaction with an offense level calculation is not a strong reason for withdrawing a plea).

"An unexpected computation will generally not serve to breach a bargain, particularly when the plea agreement acknowledged that possibility." *United States v. Torres*, 926 F.2d 321, 327 (3d Cir. 1991). Adams apparently ignores the entire written plea agreement that he signed, which explicitly acknowledges the possibility that other guideline provisions may be applied and that the Court was not bound by any stipulations between the parties. Adams also apparently ignores the extensive guilty plea colloquy during which he was advised that the Court was not bound by the parties' stipulations and that he could face up to a lifetime in prison. He alleges a self-serving promise to disguise the true reason behind his motion-his mere dissatisfaction with the guideline calculation. The problem with Adams self-serving "recollections" is that he assured the Court that no promises had been made to him other than what was contained in the written agreement. He completely disregards the Court's admonishment that, "No one can ever guarantee any defendant what sentence a judge will impose…at the end of the process, if the sentence I impose is more severe than you had hoped for, or more severe than you had expected[sic] you don't have the right to go back in time and withdraw your plea of guilty." Tr. 14.

Adams' alleged surprise regarding the plea agreement is refuted by the record and thus does not constitute a valid reason to withdraw his plea. *See, e.g. United States v. Vonsander*, 227 F. App'x 192, 194 (3d Cir. 2007) (not precedential) (defendant not permitted to withdraw plea where plea agreement clearly stated that he could not withdraw plea if the Court decided not to follow any stipulations or recommendation and where defendant stated under oath that he understood that it was not possible for anyone to guarantee his sentence).

The defendant was an active participant in the plea colloquy. After reading both the plea agreement and the government's change of plea memorandum, the defendant noted certain corrections that he wanted made in the factual basis set forth by the government in its guilty plea memorandum. The Court's lengthy discussion with the defendant made clear the terms of the plea agreement, including the fact that no one could promise him what sentence he would receive, the fact that he was giving up his trial rights, and the nature and seriousness of what he was doing when he pled guilty. After acknowledging the consequences of pleading guilty, the defendant elected to enter a plea of guilty.

## C.  Prejudice to the Government

Finally, although the government need not establish prejudice from withdrawal of a plea where the other factors are not met, it bears mentioning that such prejudice plainly exists here. The Supreme Court has recognized: "although time can tilt the case against either side, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett v. United States*, 505 U.S. 647, 655 (1992). Clearly, as more time elapses, the memory of the witnesses is diminishing.

Here, the case agent retired from FBI months ago and began another career. Adams' case was a complex, lengthy investigation which involved, among other things, authoring and executing numerous search warrants, issuing dozens of grand jury subpoenas and analyzing voluminous returns, and interviewing dozens of witnesses, including Adams himself. In the three years that the agent investigated and worked on this case, he also built a rapport with the vulnerable juvenile victims, something which is critically important in a sensitive case such as this, that cannot be substituted years later.

When Adams committed the offenses in this case four years ago, the victims were 15 and 16 years old, on the street, having run away from their foster care group home. Adams caught them at their most vulnerable, and the weeks that followed with Adams were the lowest and most traumatic of their lives. Needless to say, they were terrified of testifying against him in a trial. Fourteen months ago, following Adams' guilty plea, the government spoke with each victim to advise that them that they would not have to testify against him. Each felt an overwhelming sense of relief and a semblance of closure. To re-open the wound that is this case would be simply devastating, not to mention that the conduct in this case is now four years old. *See United States v. Clayton*, 2022 WL 2651848, at 4-5* (E.D. Pa. July 8, 2022) (Surrick, J.) (requiring young victim-witnesses to testify would prejudice the government); *United States v. Rosario*, 39 F. App'x. 697, 698 (3d Cir. 2002) (not precedential) ("great prejudice" against government after two-year delay); *United States v. Hannibal*, 663 F. App'x. 206, 209 (3d Cir. 2016) (not precedential) (where defendant waited until "eve of sentencing" to withdraw plea, it would be difficult to reassemble witnesses and gather evidence; "prejudice was heightened by the fact that the underlying conduct dated back to three years before the withdraw motion"); *United States v. Fuller*, 311 F. App'x. 550, 553 (3d Cir. 2009) (not precedential) ("this eleventh

hour plea change occurred eight months after Fuller's initial guilty plea, and a delay of several months can induce the government to relax its evidence-gathering efforts in reliance on the guilty plea") (internal citations omitted); *United States v. Houser*, 404 F. App'x. 638, 640 (3d Cir. 2010) (not precedential) (time that elapsed would prejudice government where defendant moved to withdraw plea over a year after he pled guilty and over two years after the time of his offenses; *United States v. Graulich*, 524 F. App'x. 802, 806 (3d Cir. 2013) (not precedential) (prejudice to government where seven months elapsed between guilty plea and motion to withdraw).

In addition, though Adams asserts that much of the government's pre-trial preparation had been completed and the need to re-prepare would be slim, he is sorely mistaken. The government had prepared more than 12 witnesses over 14 months ago regarding conduct that occurred four years ago, and to suggest that they could easily recall the facts and details of this case 14 months later is wishful thinking at best, especially for the victims of sexual abuse and the law enforcement officers who have handled countless other cases since that time. Moreover, some of these witnesses were incarcerated in various counties and required travel for meetings and/or writs from the Court. The government does not know the whereabouts of any civilian victim or witness to date.

Thus, although "[t]he Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea," *United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir. 1977), in this case, the prejudice to the government in having to try the case at this late date would be significant.

The Court conducted an extensive colloquy and had every reason to rely on the sworn statements of a defendant at his guilty plea hearing. Such solemn admissions under oath should

never be set aside simply because a defendant later regrets the consequences of his actions. In this case, consideration of the pertinent factors dictates that the defendant's motion be denied without a hearing. See *United States v. Thompson*, 48 F. App'x 24, 25 (3d Cir. 2002) (defendant not entitled to relief where it was clear he was not innocence of the charge; "we agree with the Court of Appeals for the Eighth Circuit that a court reviewing a motion to withdraw a guilty plea 'need not hold an evidentiary hearing if the allegations in the motion are inherently unreliable, are not supported by specific facts or are not grounds for withdrawal even if true.'") (citing *United States v. Thompson*, 906 F.2d 1292, 1299 (8th Cir.1990)).

## III.    CONCLUSION

For the reasons set forth above, the government respectfully requests that the defendant's motion to withdraw his guilty plea be denied without a hearing and this matter proceed to sentencing.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

/s/ Erica Kivitz
ERICA KIVITZ
KELLY HARRELL
Assistant United States Attorneys

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :

   v.                              :        CRIM. NO. 21-144-1

JOHN ADAMS                     :

## <u>O R D E R</u>

AND NOW, this _____ day of _____, 2024, upon considering the
defendant's Motion to Withdraw Guilty Plea, and the government's response in opposition
thereto, IT IS HEREBY ORDERED that the defendant's motion is DENIED.

BY THE COURT:

_____
**HONORABLE GERALD A. McHUGH**
**United States District Judge**

## **CERTIFICATE OF SERVICE**

It is hereby certified that the attached government's response in opposition to defendant's motion to withdraw guilty plea and proposed order was served by electronic filing or electronic mail upon the following counsel of record:

James P. Maguire, Esq.
718 Arch St, Ste. 702N
Philadelphia, PA  19106
maguire@wisemanschwartz.com


/s/ Erica Kivitz
ERICA KIVITZ
Assistant United States Attorney

DATED:  January 16, 2024