IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-144-1 |
| | : | |
| **JOHN ADAMS** | : | |

McHUGH, J.                                                                                                           April 23, 2024

**MEMORANDUM**

Defendant John Adams, who previously pleaded guilty to sex trafficking of minors, now seeks to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). In late November, 2022, days before his jury trial was set to begin, Mr. Adams pleaded guilty to sex trafficking of minors and aiding and abetting (18 U.S.C. §§ 1591, 1592), evidence and witness tampering (18 U.S.C. §§ 1519, 1512(b)(3)), and making false statements (18 U.S.C. § 1001). Two motions to continue sentencing followed, as well as a motion from the Office of the Federal Defender to withdraw as counsel, because Adams sought to withdraw his plea on the basis that that his prior attorney from the Defender "grossly misadvised" him on the range of sentences he faced. I then appointed new counsel to brief the motion to withdraw the plea.[1]

Mr. Adams' motion to withdraw his plea will be denied. Even if one were to accept Mr. Adams' characterization of the advice prior counsel gave, his written plea agreement contained no promise as to any specific sentence, and the Presentence Investigation Report incorporated the base offense level to which the parties had stipulated. The colloquy when his plea was accepted made clear that he faced a maximum possible sentence of life imprisonment, and made it equally

---

[1] The Court is grateful to James Maguire, Esq., for accepting the appointment under the Criminal Justice Act, and commends him for capable and zealous advocacy on behalf of his client despite a record that weighs strongly against his client's position.

1

clear that the sentence imposed fell exclusively within the authority of the judge. Furthermore, Mr. Adams has no credible basis on which to assert legal innocence, and allowing him to withdraw his plea at this stage would significantly prejudice the government.

**I.   Legal Standard**

"A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). In evaluating a defendant's "fair and just" reasons for withdrawing a guilty plea, the court must consider three factors: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal. *United States v. Rivera*, 62 F.4th 778, 788 (3d Cir. 2023). Within the Third Circuit, a "defendant bears a substantial burden of showing a fair and just reason for the withdrawal of his plea. A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Id.*

**II.   Discussion**

A. *Assertion of Innocence*

The Third Circuit has held that "[l]egal innocence alone can support withdrawal of a guilty plea," because "[i]f a defendant is not legally culpable . . . he is exempt from any punishment for the alleged acts constituting the crime, regardless of whether he committed them." *United States v. James*, 928 F.3d 247, 253-54 (3d Cir. 2019). Before pleading guilty, Mr. Adams claimed legal innocence on the theory that 18 U.S.C. § 1591 does not apply to "local street crime prostitution." Def.'s Mot. to Dismiss at 5 (ECF 59). I considered this argument in detail before rejecting it, as

2

have numerous other federal circuit and district courts. ECF 62 & 63. An argument deemed meritless cannot now provide a basis for Mr. Adams to withdraw his guilty plea. *See United States v. Clayton*, No. 18-524, 2022 WL 2651848, at *4-5 (E.D. Pa. July 8, 2022) ("Defendant's persistence in making a meritless claim [that the TVPA does not criminalize interstate sex trafficking] will not satisfy the legal innocence standard."). Moreover, as I reiterated at Mr. Adams' plea hearing, he retains the right to appeal my ruling on this issue. Hearing Tr., Nov. 22, 2022 at 20 (ECF 168).

Mr. Adams also points to discovery that never reached him despite his counsel having provided it to the Bureau of Prisons. He now suggests that, had he been able to review that discovery, he would have noted credibility concerns with government witnesses and not have pleaded guilty. Def.'s Mot. to Withdraw at 3-4 (ECF 186). Because his claim is one of legal, not factual innocence, his views on the relative strength of the evidence has little relevance here: he conceded under oath to having committed the acts which form the basis of his plea. Mr. Adams also explicitly confirmed at the end of his plea hearing that his lack of access to this discovery had no impact on his decision to plead guilty:

> MS. TAYLOR-SMITH: Your Honor . . . I did want to make the Court aware of the fact – and it did not impact – and I – the Court can colloquy Mr. Adams on this, but **it did not impact why Mr. Adams ultimately decided to plead guilty**, but he did not ever receive the additional discovery that I provided to the Bureau of Prisons for his use for preparation for trial . . . . He wanted you to be aware of it, but **it was not the reason why he decided to enter into this plea.**
>
> THE COURT: All right. Well, first let me express my appreciation to you and Mr. Adams for bringing this to the Court's attention . . . . But, Mr. Adams, I assume you agree with your counsel. **That's not the reason that you pleaded guilty here today, is that correct?**
>
> MR. ADAMS: No, and I spoke with her two times. She came and left documents for me, and I never got them.

3

> THE COURT: And so – well, I'm going to pursue an appropriate follow-up there. But as your counsel said, **that's not the basis on which you've entered a plea of guilty today, correct?**
>
> MR. ADAMS: No, sir.

Hearing Tr., Nov. 22, 2022 at 28-30 (emphasis added).

Any regrets Mr. Adams now has about pleading guilty before reviewing and considering this additional discovery fall within *Rivera's* purview of a "change of mind" or a "shift in defense tactics," not a basis for remonstrating Defendant's legal or actual innocence.

B. *Strength of Defendant's Reasons*

Mr. Adams asserts that he agreed to plead guilty "in reliance on the gross misadvice of his then counsel." Def.'s Mot. to Withdraw at 4. According to Mr. Adams, his attorney falsely informed him that "if he accepted the plea, the government would be obligated to seek a sentence of less than 15 years" under the guidelines described in the plea agreement, and had he known otherwise, he would not have agreed to plead guilty. *Id.* More specifically, Adams contends that he should be permitted to now withdraw his plea because the Presentence Report includes "substantial additional enhancements" that were not described in the agreement, which greatly increase the government's minimum recommended sentence based on the guidelines. *Id.* at 6.

Even if Mr. Adams' counsel misadvised him as he describes[2], a change of plea would not be warranted on this basis. First, the Presentence Report incorporated the base offense level to which counsel stipulated. Beyond that, the plea agreement specifically stated that the government may "[m]ake whatever sentencing recommendation the government deems appropriate provided its recommendation is within the applicable Sentencing Guidelines range," and further stated:

---

[2] Mr. Adams' prior conduct provides reason to question his credibility. In connection with this case, he voluntarily visited both local and federal law enforcement authorities and lied to them in an attempt to hide his criminal conduct. Later, he orchestrated the recording of a staged narrative in which he tried to exculpate himself.

4

> It is understood and agreed that: **(l) the parties are free to argue (except as stated below) the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments, and departures**; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

Guilty Plea Agreement at 8 (ECF 147) (emphasis added).

Mr. Adams describes this language in the agreement as a hidden "contractual trap" that "ensnared" him into pleading guilty, Def.'s Mot. to Withdraw at 8, because the government did not highlight this language or identify what additional enhancements it might argue during the plea hearing. *Id.* at 5. But a plea hearing does not require a literal recitation of every provision of a plea agreement. Here, after first confirming with Mr. Adams that he had thoroughly read and discussed the agreement with counsel before voluntarily signing it, I asked the government to summarize the agreement's "essential terms:"

> MS. KIVITZ: As outlined in Paragraph 1, the Defendant is pleading to all charges contained in the superseding indictment. **At the time of sentencing, the Government will make whatever sentencing recommendation the Government deems appropriate, provided its recommendation is within the applicable sentencing guidelines range** . . . .
>
> **The Defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement. No one has promised or guaranteed to the Defendant what sentence the Court will impose . . . .**
>
> The Defendant and his lawyer have fully discussed this plea agreement, and the Defendant is agreeing to plead because the Defendant admits that he is guilty.
>
> And lastly, it is agreed that the party's guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement. And that no additional promises, agreements for understandings will be entered into unless in writing and signed by all parties.

5

>THE COURT: All right, thank you, Counsel. Ms. Taylor-Smith, are there any agreements, or conditions, or promises, aside from what's set forth here in the written plea agreement?
>
>MS. TAYLOR-SMITH: No, Your Honor.
>
>THE COURT: All right. And turning to you, Mr. Adams, has anyone promised you anything, or offered you anything, aside from what's here in writing?
>
>MR. ADAMS: No, sir.
>
>THE COURT: Whenever anyone enters a plea of guilty, Mr. Adams, it's the obligation of the judge to discuss with them the maximum possible penalties that they face and any mandatory minimum penalties. The maximum is not necessarily the sentence you will get, but it tells you what the maximum punishment by law is. And in this case, with respect to Counts 1 and 2, which is sex trafficking of a minor, **the maximum sentence is as much as life imprisonment**. There is a ten-year mandatory minimum term of imprisonment . . . .
>
>And do you understand, sir, that those are the potential maximum penalties and the mandatory minimum penalty that you face as a result of pleading guilty?
>
>MR. ADAMS: Yes.
>
>THE COURT: **No one can ever guarantee any defendant what sentence a judge will impose.** In fact, sitting here today, Mr. Adams, I don't know yet what is the appropriate sentence in your case because I need to learn more. **But at the end of the process, if the sentence I impose is more severe than you had hoped for, or more severe than you had expect it, you don't have the right to go back in time and withdraw your plea of guilty.** And do you understand that, sir?
>
>MR. ADAMS: Yes.

Hearing Tr., Nov. 22, 2022 at 9-14 (emphasis added).

In short, Mr. Adams explicitly acknowledged that (a) the government had made no guarantees about a recommended sentence, (b) the Court remained free to impose a higher sentence, and (c) if he received a higher sentence than expected, he would not be able to withdraw his guilty plea.

I then explained the sentencing process to Mr. Adams. He acknowledged his understanding that I would look to the Presentencing Report to consider the applicable Sentencing Guidelines in his case, as well as the enhancement factors prescribed by Congress, before determining an

appropriate sentence.  *Id.* at 14-16.  I further explained that although Mr. Adams could contest any information contained in the Presentencing Report before sentencing, he would be bound by its conclusions.  *Id.* at 16.

> THE COURT: If there's something in [the Presentencing Report] you think is unfair or untrue, you can ask the Probation Office to change it.  Maybe they will, maybe they won't.  If they refuse to change it, you have the right to ask me to change it, again through your attorney.  And I'll make a decision; and maybe I will, maybe I won't.  But when we're done that process, we'll have a final presentence investigation report.  And it's on the basis of what's in there that I need to decide on the appropriate sentence in your case.  **And just as with your plea of guilty, even if there's something in there with which you disagree, you don't have the right to go back and withdraw your plea of guilty.**  Understood, sir?
>
> MR. [ADAMS]: Yes, sir.

*Id.* at 16 (emphasis added).

Whatever Mr. Adams' counsel conveyed to him about a likely sentence, the written plea agreement and the in-court colloquy make clear that he had no guarantees about his eventual sentence and could not withdraw if he was unsatisfied with the government's ultimate recommendation.  *United States v. Shedrick*, 493 F.3d 292, 299 (3d. Cir. 2007) ("This case falls well within well-established precedent: defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion."); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum."); *United States v. Torres*, 926 F.2d 321, 327 (3d Cir. 1991) ("An unexpected computation will generally not serve to breach a bargain, particularly when the plea agreement acknowledged that possibility.").  I therefore do not find a sufficient reason to permit Mr. Adams to withdraw his guilty plea.

C. *Prejudice to the Government*

Lastly, Mr. Adams argues that if he were to withdraw his guilty plea and proceed to trial, any prejudice to the government would be minimal because (a) Mr. Adams would be tried alone, (b) the government's witnesses likely remain available, and (c) the government's pretrial preparation "has likely been completed" already. Def.'s Mot. to Withdraw at 9. I disagree. As the government points out, significant time has now passed since the government initially prepared its case. The case agent has since retired, and the government cannot readily confirm the location or availability of its witnesses. Gov.'s Opp'n Br. at 17 (ECF 189). And perhaps most importantly, the government reports that Mr. Adams' victims – both of whom were minors – "were terrified of testifying against him in a trial" and "felt an overwhelming sense of relief" upon learning of his plea. *Id.* To reverse course now would place the prosecution at a significant and unwarranted disadvantage. On balance, even if there were a basis on which to allow the withdrawal, I am persuaded that the government would be significantly burdened.

### III. Conclusion

For the reasons set forth above, Mr. Adams' motion to withdraw his guilty plea will be denied. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge

8