**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL ACTION NO. 21-144** |
| | **:** | |
| **JOHN ADAMS** | **:** | |

**McHUGH, J.**                                                              **May 26, 2026**

### MEMORANDUM

Defendant John Adams pleaded guilty to sex trafficking and related crimes.  His direct appeal was unsuccessful, and he now moves for relief under 18 U.S.C. § 2255.  The motion lacks merit and will be denied.

Defendant makes a variety of arguments contesting both the validity and applicability of the Trafficking Victims Protection Act. Similar arguments were considered and rejected at earlier stages of this case.  *United States v. Adams,* 578 F. Supp. 3d 692 (E.D. Pa. 2022), *aff'd*, 132 F.4th 259 (3rd Cir. 2025), *cert denied*, 145 S.Ct. 2826 (2025). No further discussion is warranted here.

Mr. Adams next claims a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) on the part of the Bureau of Prisons because of delay in his receiving certain discovery materials.  Even if one assumes that *Brady* applies to the BOP, there is no merit to this argument.  First, Adams does not contend that prosecutors withheld discovery, but rather that he was not granted timely access to discovery materials left by his lawyer At the Philadelphia Detention Center.  ECF 246, p. 13.  Second, he summarily refers to the materials as exculpatory, but points to nothing that would have facilitated his defense, in a case where there was substantial evidence against him, much in the form of incriminating text messages retrieved from his phone.  Finally, as discussed in my memorandum denying Adams's motion to withdraw his guilty plea, he was aware that

there were additional materials he had not reviewed, and with that knowledge chose to proceed with his plea.  ECF 191 at 3-4. On this record, no *Brady* violation exists.

Adams next argues ineffective assistance of counsel.  In practical terms, most of these arguments were considered and rejected when I denied his motion to withdraw his guilty plea. *See generally* ECF 191.  I will nonetheless address them separately here.

First, Adams argues that his counsel incorrectly informed him of the elements of the offenses to which he pleaded guilty.  Even if one assumes this to be true, there is no prejudice because at the plea hearing the prosecutor reviewed the elements, Mr. Adams was asked if he had questions about the charges, and he replied that he did not. ECF 168 p. 23. Separately, Mr. Adam acknowledged that he had read the Government's Change of Plea Memorandum, *id.* at 25, which accurately set forth the elements of the offenses, *see* ECF 146.

Next, Adams repeats arguments that he raised earlier to the effect that his attorney made assurances to him about offense levels and range of sentence.  Even if Mr. Adams's counsel misadvised him as he describes, he cannot show prejudice.  First, the Presentence Report incorporated the base offense level to which counsel stipulated.  Beyond that, the plea agreement specifically stated that the government may "[m]ake whatever sentencing recommendation the government deems appropriate provided its recommendation is within the applicable Sentencing Guidelines range," and further stated:

> [I]t is understood and agreed that: (l) the parties are free to argue (except as stated below) the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments, and departures; (2) these stipulations are not binding upon either the Probation Office or the Court; and (3) the Court may make factual and legal determinations that differ from these stipulations and that may result in an increase or decrease in the Sentencing Guidelines range and the sentence that may be imposed.

Guilty Plea Agreement at 8, ECF 147 (emphasis added).

Here, after first confirming with Mr. Adams that he had thoroughly read and discussed the agreement with counsel before voluntarily signing it, I asked the government to summarize the agreement's "essential terms":

> MS. KIVITZ: As outlined in Paragraph 1, the Defendant is pleading to all charges contained in the superseding indictment.  **At the time of sentencing, the Government will make whatever sentencing recommendation the Government deems appropriate, provided its recommendation is within the applicable sentencing guidelines range . . . .**
>
> **The Defendant may not withdraw his plea because the Court declines to follow any recommendation, motion, or stipulation by the parties to this agreement.  No one has promised or guaranteed to the Defendant  what sentence the Court will impose . . . .**
>
> The Defendant and his lawyer have fully discussed this plea agreement, and the Defendant is agreeing to plead because the Defendant admits that he is guilty.
>
> And lastly, it is agreed that the party's guilty plea agreement contains no additional promises, agreements, or understandings other than those set forth in this written guilty plea agreement.  And that no additional promises, agreements  for understandings will be entered into unless in writing and signed by all parties.
>
> THE COURT: All right, thank you, Counsel.  Ms. Taylor-Smith, are there any agreements, or conditions, or promises, aside from what's set forth here  in  the written plea agreement?
>
> MS. TAYLOR-SMITH: No, Your Honor.
>
> THE COURT: All right.  And turning to you, Mr. Adams, has anyone promised you anything, or offered you anything, aside from what's here in writing?
>
> MR. ADAMS: No, sir.
>
> THE COURT: Whenever anyone enters a plea of guilty, Mr. Adams, it's the obligation of the judge to discuss with them the maximum possible penalties that they face and any mandatory minimum penalties.  The maximum is not necessarily the sentence you will get, but it tells you what the maximum punishment by law is. And in this case, with respect to Counts 1 and 2, which is sex trafficking of a minor, **the maximum sentence is as much as life**

3

**imprisonment**.    There    is    a    ten-year    mandatory    minimum    term    of imprisonment . . . .

And do you understand, sir, that those are the potential maximum penalties and the mandatory minimum penalty that you face as a result of pleading guilty?

MR. ADAMS: Yes.

THE COURT: **No one can ever guarantee any defendant what sentence a judge will impose.** In fact, sitting here today, Mr. Adams, I don't know yet what is the appropriate sentence in your case because I need to learn more. **But at the end of the process, if the sentence I impose is more severe than you had hoped for, or more severe than you had expect it, you don't have the right to go back in time and withdraw your plea of guilty.** And do you understand that, sir?

MR. ADAMS: Yes.

Hearing Tr., Nov. 22, 2022, at 9-14 (emphasis added).

In    short,    Mr.    Adams    explicitly    acknowledged    that    (a)    the    government    had made    no    guarantees    about    a    recommended    sentence,    (b)    the    Court    remained    free    to impose    a    higher sentence, and (c) if he received a higher sentence than expected, he would not be able to withdraw his guilty plea.

I    then    explained    the    sentencing    process    to    Mr.    Adams.    He    acknowledged    his understanding    that    I    would    look    to    the    Presentencing    Report    to    consider    the    applicable Sentencing    Guidelines    in    his    case,    as    well    as    the    enhancement    factors    prescribed    by Congress,    before    determining    an    appropriate    sentence.    *Id.* at 14-16.    I further explained that although Mr. Adams could contest any information contained in the Presentencing Report before sentencing, he would be bound by its conclusions.    *Id.* at 16.

THE    COURT:    If    there's    something    in    [the    Presentencing    Report]    you think    is    unfair    or    untrue,    you    can    ask    the    Probation    Office    to    change    it. Maybe    they    will,    maybe    they    won't.    If    they    refuse    to    change    it,    you    have the    right    to    ask    me    to    change    it,    again    through    your    attorney.    And    I'll    make    a decision;    and    maybe    I    will,    maybe    I    won't.    But    when    we're    done    that process,    we'll    have    a    final    presentence    investigation    report.    And    it's    on    the basis    of    what's    in    there    that    I    need    to    decide    on    the    appropriate    sentence    in

4

your case. **And just as with your plea of guilty, even if there's something in there with which you disagree, you don't have the right to go back and withdraw your plea of guilty.** Understood, sir?

MR. [ADAMS]: Yes, sir.

*Id.* at 16 (emphasis added).

Whatever Mr. Adams's counsel conveyed to him about a likely sentence, the written plea agreement and the in-court colloquy make clear that he had no guarantees about his eventual sentence and could not withdraw if he was unsatisfied with the government's ultimate recommendation. *United States v. Shedrick*, 493 F.3d 292, 299 (3d. Cir. 2007) ("This case falls well within well-established precedent: defense counsel's conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion."); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

Adams' final argument as to ineffective assistance is that his counsel had a conflict of interest while representing him because she declared her candidacy for the Philadelphia County Court of Common Pleas. He claims that being a candidate gave her a personal interest to appear "tough on crime" by avoiding controversy in representation of a sex trafficker. ECF 246, p15-16. This argument fails in multiple respects. First, counsel had spent more than half of her career as a public defender in both state and federal courts and could hardly run away from her background representing numerous criminal defendants, some accused of serious and reprehensible crimes. Second, there is

5

no reason to believe that the routine work of a public defender negotiating the intricacies of a federal plea agreement would draw any public attention whatsoever in a crowded field of 13 candidates for 10 open positions,[1] and Adams points to no such attacks. Finally, Adams points to no statements or materials from his attorney's campaign that could be construed as adverse to his interests or taking any stance that would suggest a conflict.

In sum, Adams has failed to establish ineffective assistance under the test established by *Strickland v. Washington*, 466 U.S. 668 (1984).

Finally, Mr. Adams argues that the factors set forth in 28 U.S.C. § 2255 were not properly applied, resulting in a "substantively unreasonable and disparate sentence." ECF 246, p.18. He claims that mitigation was not considered that there is unwarranted disparity with co-defendants, and that his individual characteristics were ignored. As a preliminary matter, this argument should have been pursued on direct appeal and is not properly raised under § 2255. Relief can be denied on that ground alone. Regardless, there is no merit to his contentions. The Guideline range for Mr. Adams was 360 months to life, and he received a sentence of 300 months: it was not imposed as a matter of rote. As to his co-conspirators, some of whom cooperated, his conduct was of an entirely different order of magnitude, conduct for which he has shown no remorse, as evidenced by his continued verbal attacks on the teenage girls he victimized. See ECF 246, p. 20. And his Guidelines were enhanced by his guilty pleas on charges of obstructing the investigation.

---

[1] https://www.electionreturns.pa.gov/_ENR/General/CountyResults?countyName=PHILADELPHIA&ElectionID=100&ElectionType=G&IsActive=0 (Last accessed 5/21/2026)

For the reasons set forth above, the motion will be denied without a certificate of appealability.


        /s/ Gerald Austin McHugh
United States District Judge